UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Nelson Fitzpatrick, III | : | Case No. 3:07CV02087 |
| Plaintiff, | : | |
| vs. | : | |
| Commissioner of Social Security, | : | MEMORANDUM DECISION AND ORDER |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U.S.C § 405(g), of Defendant's final determination denying his claims for (1) disability insurance benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. §§ 416 (i) and 423 and (2) Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* Pending are the parties' Briefs on the merits (Docket Nos. 16 and 19) and Plaintiff's Reply (Docket No. 20). For the reasons set forth below, the Commissioner's decision is affirmed.

## PROCEDURAL BACKGROUND

On August 20, 2003, Plaintiff filed an application for DIB alleging that he became disabled on June 1, 2001 (Tr. 62-64). The application was denied initially and upon reconsideration (Tr. 28-31, 36-38). Plaintiff filed an application for SSI on July 2, 2003 (Tr. 15). Such application was denied initially and upon reconsideration (Tr. 5,12). Plaintiff, represented by counsel, and Joseph Havranek, a

Vocational Expert (VE) appeared and testified at a video hearing on January 19, 2006, before Administrative Law Judge (ALJ) Bryan J. Bernstein (Tr. 238). The ALJ rendered an unfavorable decision denying benefits on November 1, 2006 (Tr. 15-24). The ALJ's decision became the final decision of the Commissioner on May 17, 2007 when the Appeals Council denied review (Tr. 5-7). Plaintiff filed a timely request for judicial review on July 12, 2007 (Docket No. 1).

## FACTUAL BACKGROUND

During July or August of 2001, Plaintiff injured his back while digging footers on a construction job (Tr. 241, 242). The following morning he was paralyzed from his lower back to his ankle (Tr. 242). Except for short term work attempts, Plaintiff never engaged in substantial employment after he sustained this injury (Tr. 241, 242).

Plaintiff's work history included mechanic type work and he sometimes read blueprints (Tr. 241). Plaintiff had asthma and back pain, shooting thigh pain, constant left foot numbness and numbness of arms and fingers (Tr. 244, 246). His extremities tingled when touched and occasionally felt as if they were burning or being pricked with needles (Tr. 246). Plaintiff was prescribed a pain reliever, muscle relaxer and inhaler (Tr. 244, 250, 251). His medication made him drowsy (Tr. 246, 250, 252). Occasionally, Plaintiff took a "hot soak in the tub" to relieve his symptoms (Tr. 248). Plaintiff had undergone injections in the lower back but without long-term results (Tr. 250-251).

The length of time Plaintiff could sit was predicated upon the dosage of his medication and the severity of pain (Tr. 247, 248). He had to lie down three to four times daily. Getting up was difficult (Tr. 247). On a good day, Plaintiff estimated that he could sit up to two hours before he had to stand or lie down. Because standing really hurt his back, Plaintiff could only stand for one half hour before he had to move (Tr. 248).

Plaintiff opined that he could only lift ten pounds occasionally (Tr. 248-249). He could not bend without experiencing severe pain (Tr. 249). He could not go up or down stairs without becoming short-winded or without having difficulty with his left leg (Tr. 249). He had difficulty manipulating his hands and occasionally, his hand became numb and stiff (Tr. 250).

Plaintiff resided with his father and his step-mother. His parents did the household chores. Occasionally, Plaintiff shopped and cooked his own meals (Tr. 245). Plaintiff's driver's license was suspended. He relied on his father and sister to transport him and sometimes he used bus transportation (Tr. 244, 245).

The VE opined that the hypothetical claimant who was required to sit and stand while working, stand and walk no more than twenty-five percent of an eight hour work day, refrain from engaging in extreme positions - stoop, kneel and bend more than occasionally or perform tasks requiring repetitive manipulation, could not engage in Plaintiff's past relevant work or any work with transferrable skills. There was, however, other sedentary, unskilled work that would accommodate Plaintiff's limitations, namely, a hand mounter of photographic products, a microfilm document preparer and table worker. In the region within a 75 mile radius of Toledo, Ohio, there were 200 to 250 hand mounter jobs, 500 microfilm document preparer jobs and up to 250 table worker jobs (Tr. 253, 254). Such jobs could be performed by a person who was required to alternate between sitting and standing (Tr. 254). The characterization of these jobs was consistent with the description of jobs in the DICTIONARY OF OCCUPATIONAL TITLES (DOT) (Tr. 254).

**MEDICAL EVIDENCE**

*1. Mercy Family Practice (Tr. 140-147)*

Plaintiff was treated for asthma, migraines, allergies polyneuropathy and radiculopathy from

December 19, 2001, through May 9, 2003. During the course of treatment, Plaintiff's asthma was well controlled. He was prescribed migraine medication (Tr. 146). On December 11, 2002, an attending physician opined that Plaintiff's asthma was exacerbated by tobacco abuse (Tr. 145). Plaintiff was prescribed drug therapy for the treatment of pain, tenderness and numbness in his foot and lower legs and thighs on January 31, 2003 (Tr. 143). On February 26, 2003, Plaintiff was prescribed additional medication to treat the symptoms attributed to paraspinal tenderness and difficulty breathing and coughing. Physical therapy was also prescribed (Tr. 142). On May 9, 2003, Plaintiff completed physical therapy. There was no sign of pain with forced dorsiflexion of the ankle and Plaintiff could ambulate normally. However, the numbness in his knee that radiated to his foot persisted (Tr. 140).

### 2. *Dr. Timothy H. Sigman* (Tr. 137-138)

The results of the nerve conduction study administered on February 17, 2003, confirmed the existence of subacute left L5 radiculopathy. Conservative treatment in the form of physical therapy was recommended (Tr. 138).

### 3. *Emergency Medicine (Tr. 148-156; 211-219).*

Plaintiff was treated at St. Vincent Mercy Medical Center on July 15, 2003. Plaintiff suffered from altered sensation and pain in his left shoulder and upper extremities (Tr. 150). He was prescribed pain relievers and advised to apply moist heat to the area of pain (Tr. 153).

On August 17, 2005, Plaintiff was treated for low back and arm pain with drug therapy (Tr. 214, 215). The attending physician attributed the pain to muscle and ligament strain (Tr. 217).

### 4. *St Vincent Mercy Medical Center (Tr. 157-169 & 187- 94, 203-205).*

Dr. Imran A. Andrabi administered a spine evaluation on March 18, 2003 (Tr. 164-165). Subsequently, Dr. Andrabi began treatment to relieve pain (Tr. 164). At the conclusion of the therapy

regime on April 15, 2003, the severity of Plaintiff's pain was reduced and his level of functioning had improved (Tr. 158).

Plaintiff was admitted to the pain clinic on January 14, 2005, and non-narcotic pain relievers were prescribed (Tr. 205). On February 1, 2005, Dr. Michael J. Barrett conducted a review of Plaintiff's lumbar system and a history of his asthma and sleep apnea (Tr. 204). On February 1 and 8, 2005, Dr. Ahmed M. Eltaki successfully administered epidural steroid injections for purposes of alleviating pain (Tr. 188-189, 190-191).

### 5. Dr. Hudson V. Jones (Tr. 170-173, 179-184 & 206-210).

Even after a magnetic resonance imaging (MRI) was performed, Dr. Hudson V. Jones, Plaintiff's treating physician, was unable to identify any evidence of disc herniation in the lumbar region on August 13, 2003 (Tr. 169). Consequently, he referred Plaintiff to a neurosurgeon on August 19, 2003 (Tr. 172). Dr. Jones continued to treat Plaintiff for back pain in January and February 2004 (Tr. 171, 172). However, Plaintiff continued to complain of back pain on February 6, 2004 (Tr. 171). Dr. Jones continued to treat the symptoms with drug therapy throughout 2005 (Tr. 182-184, 207-208).

On March 7, 2005, Dr. Jones opined that Plaintiff could lift/carry a maximum of five pounds occasionally, stand/walk for one hour and sit about two hours in an eight-hour workday (Tr. 180). He further suggested that Plaintiff should never climb and that his ability to reach, handle, feel, see, hear and speak were affected by his impairment. The only environmental limitation acknowledged by Dr. Jones was the exposure to temperature extremes including humidity and vibration (Tr. 181).

On August 29, 2005, Dr. Jones administered a battery of tests to detect the presence of antibodies that cause hepatitis (Tr. 209-210). Plaintiff tested positive for exposure to hepatitis B (Tr. 209).

### 6. Dr. Shakil A. Khan (Tr. 185-186, 195-202)

In correspondence addressed to Dr. Jones, Dr. Khan, a pulmonary/critical care specialist, advised that after a comprehensive examination on February 3, 2005, he was suspicious that Plaintiff had sleep apnea and that the heavy tobacco use had resulted in brochospasm and chest congestion (Tr. 186, 196 - 202). The tests themselves revealed reduced lung functioning. No significant improvement resulted from the introduction of drugs to relax the airway muscles. There was evidence of a mildly severe ventilatory defect (Tr. 198).

### 7. *Dr. Charles Price (Tr. 201)*

Although prior ex-rays were not available for comparison, the ex-rays of Plaintiff's chest, taken on February 3, 2005, showed clear lungs, a normal heart and mediastinum as well as an absence of pleural effusions. Overall, Plaintiff was free of acute cardiopulmonary disease (Tr. 201).

### 8. *Physical Residual Functional Capacity Assessments (Tr. 174-178)*

Dr. Ellin Cussack Frair opined on November 20, 2003 that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk at least two hours in an eight-hour workday, sit about six hours in an eight-hour workday and engage in unlimited pushing and/or pulling (Tr. 175). Plaintiff could occasionally climb using a ladder/rope/scaffold, stoop, crouch or crawl (Tr. 176). Otherwise, Plaintiff had no manipulative, visual, communicative or environmental limitations (Tr. 176-177).

## **STANDARD OF DISABILITY**

The standard for disability under both the DIB and SSI programs is substantially similar. *See* 20 C. F. R. § 404.1520 and 20 C. F. R. § 416.920 (1999). To assist clarity, this Memorandum Decision and Order reference only the DIB regulations, except where otherwise necessary.

To establish entitlement to disability benefits, a claimant must prove that she or he is incapable

of performing substantial gainful activity due to a medically determinable physical or mental impairment that can be expected to result in death or to last for at least twelve months. *Murphy v. Secretary of Health and Human Services*, 801 F.2d 182, 183 (6th Cir. 1986) (*citing* 42 U. S. C. § 423(d)(1)(A)). The claimant must show that his/her impairment results from anatomical, physiological or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 20 C. F. R. §§ 404.1513, 404.1528, 416.913, 416.928 (Thomson Reuters/West 2008).

To determine disability, the ALJ uses a five-step sequential evaluation process. 20 C. F. R. §§ 404.1520 (a)-(f) and 416.920 (a)-(f) (Thomson Reuters/West 2008). The ALJ considers: (1) whether claimant is working and whether that work constitutes substantial gainful activity, (2) whether claimant has a severe impairment, (3) whether claimant has an impairment which meets or equals the durational requirements listed in Appendix 1 of Subpart P, Regulations No. 4, (4) whether claimant can perform past relevant work, and (5) if claimant cannot perform his/her past relevant work, then his/her RFC, age, education and past work experience are considered to determine whether other jobs exist in significant numbers that accommodate him/her. 20 C. F. R. §§ 404.1520 (a) - (f) and 416.920 (a) - (f) (Thomson Reuters/ West 2008).

A finding of disability requires an affirmative finding at step three or a negative finding at step five. The claimant bears the burden of proof at steps 1-4, after which the burden shifts to the Commissioner at step five. The ALJ's analysis at step five typically involves an evaluation of the claimant's RFC to perform a particular category of work (i.e., sedentary, light, medium, heavy or very heavy work), in combination with an application of the grid to determine whether an individual of the claimant's age, education and work experience could engage in substantial gainful activity. *See* 20 C. F. R. Pt. 404, Subpart P, App. 2 (Thomson Reuters/West 2008).

## THE ALJ'S FINDINGS

After careful consideration of the entire record, the ALJ made the following findings:

1. Plaintiff met the insured status requirements of the Act through December 31, 2006.
2. Plaintiff had not engaged in substantial gainful activity since June 1, 2001, the alleged onset date of his disability.
3. Plaintiff had severe impairments, namely, asthma and low back pain. However, Plaintiff's impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 C. F. R. Part 4, Subpart P, Appendix 1.
4. Plaintiff was not reliable.
5. Plaintiff was unable to perform any of his past relevant work but he could perform a restricted range of work activity. When his age, education, work experience and residual functional capacity were considered, there were jobs that existed in the national economy that Plaintiff could perform.
6. Plaintiff had not been under a disability as defined under the Act from June 1, 2001 through November 1, 2006.

(Tr. 15-24).

## STANDARD OF REVIEW

Pursuant to 42 U. S. C. §§ 405(g), this Court has jurisdiction to review the Commissioner's decisions. *Cutlip v. Secretary of Health and Human Services*, 25 F. 3d 284, 286 (6th Cir. 1994). Judicial review of the Commissioner's decisions is limited to determining whether such decision is supported by substantial evidence and whether the Commissioner employed the proper legal standards. *Id.* (*citing Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* (*citing Kirk v. Secretary of Health & Human Services*, 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied,* 103 S. Ct. 2428 (1983)). The reviewing court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Id.* (*citing Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir.1989); *Garner v. Heckler*, 745 F.2d

383, 387 (6th Cir.1984)).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Id.* (*citing Kirk*, 667 F.2d at 536). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *See Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983), and even if substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

## **DISCUSSION**

The arguments in Plaintiff's Brief and Reply present three issues: 1) whether the ALJ failed to properly apply the treating physician rule, 2) accurately assess Plaintiff's credibility, and 3) consider the proper factors when evaluating Plaintiff's pain.

*1. Dr. Jones' Opinions*

Plaintiff claims that this case must be remanded so that the ALJ can correct his errors. There is no indication that the ALJ used the correct standard of review for treating physicians since he made no reference to such standard and he failed to attribute controlling weight to the treating physician's opinions. Moreover, the ALJ did not discuss the bulk of Dr. Jones' opinions. He obviously omitted any reference to Dr. Jones' assessment of exertional limitations.

In assessing the medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242 (6th Cir. 2007). Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule. *Id.* (*citing* SOC. SEC. RUL. 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Commissioner of Social*

*Security,* 378 F.3d 541, 544 (6th Cir. 2004)). Because treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone," their opinions are generally accorded more weight than those of non-treating physicians. *Id.* (*citing* 20 C. F. R. § 416.927(d)(2)). Therefore, if the opinion of the treating physician as to the nature and severity of a claimant's conditions is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other substantial evidence in the record, then it will be accorded controlling weight. *Id.* (*citing Wilson,* 378 F.3d at 544).

While the ALJ in this case did not expound upon the treating source principles to the extent set forth above, he acknowledged that Dr. Jones was a treating source and that his opinions were not supported by medical findings or a narrative. Such review is consistent with the assessment required to be given a treating source.

The longitudinal picture of Dr. Jones' treatment consists of sporadic visits for the purposes of monitoring Plaintiff's consumption of therapeutic drugs for pain twice during 2003, seven times during 2004 and six times during 2005. During the course of treatment Dr. Jones administered an MRI and conducted tests to determine the existence of the hepatitis antibodies. The results of the MRI showed no evidence of herniation in the lumbar region. There is no evidence that the detection of hepatitis B antibodies constituted a functional limitation or disability. Dr. Jones' assessment of Plaintiff's ability to do work related activities was based on these series of events. Even if the ALJ considered Dr. Jones a treating source, his opinions were not based on objective medical evidence but descriptions of symptoms described to Dr. Jones by Plaintiff. The evidence presented by Dr. Jones is not entitled to controlling status.

There is an additional procedural requirement associated with the treating physician rule. *Id.* When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. *Id.* However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding. *Id.* (*citing* SOC. SEC. RUL. 96-2p, 1996 WL 374188, at *4). The ALJ must provide "good reasons" for discounting treating physicians' opinions, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (*citing* SOC. SEC. RUL. 96-2p, 1996 WL 374188, at *5). The purpose of this procedural aspect of the treating physician rule is to allow the claimants to understand the disposition of their cases, particularly where a claimant knows that his or her physician has deemed him or her disabled and therefore might be bewildered when told by an administrative bureaucracy that she or he is not, unless some reason for the agency's decision is supplied. *Id.* at 242-243 (*citing Wilson,* 378 F.3d at 544) (*quoting Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999)). Further, this procedural aspect of the treating physician rule ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule. *Id.* Because of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record. *Id.*

The ALJ explained why he attributed less weight to Dr. Jones' opinions. First, Dr. Jones' opinions were in large part, unsupported by objective medical findings. Second, the few diagnostic tests that Dr. Jones administered did not produce clinical evidence of severe impairments. Third, there was no narrative of Dr. Jones' opinions, merely, progress notes reflecting Plaintiff's subjective claims. Fourth, the effects of Plaintiff's impairments on his functional limitations were not consistent with each other or the medical evidence presented by Dr. Jones. Fifth, the course of treatment for asthma symptoms that Dr. Jones employed was inconsistent with his assessment of environmental limitations.

These reasons are "good reasons" for discounting Dr. Jones' opinions. Such good reasons constitute substantial evidence to justify a finding that Dr. Jones' opinions are not entitled to great weight.        *2. Plaintiffs Credibility*

In addition to the ALJ's propensity to find all claimants unreliable, Plaintiff contends that the ALJ unfairly dissected his testimony, made unfair moral judgments, penalized him for his faulty memory, failed to consider the lack of sensation on his left foot or the tests that were indicative of pain and consider his forthrightness with respect to what he could do.

It is unequivocal that claimant testimony can support a claim for disability provided there is also evidence of an underlying medical condition. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 542 (6th Cir. 2007) (*citing Jones v. Commissioner,* 336 F.3d 469, 475 (6th Cir. 2003) (*citing Young v. Secretary of Health & Human Services,* 925 F.2d 146, 150-151 (6th Cir. 1990)). However, an ALJ is not required to accept a claimant's subjective complaints and the ALJ may consider the credibility of a claimant when making a determination of disability. *Id.* (*citing Jones,* 336 F. 3d at 476; *Walters v. Commissioner of Social Security,* 127 F.3d 525, 531 (6th Cir. 1997)). Notably, an ALJ's credibility determinations about the claimant are to be given great weight, "particularly since the ALJ is charged

with observing the claimant's demeanor and credibility." *Id.* Such determinations must be supported by substantial evidence. *Id.* (*citing Walters,* 127 F.3d at 531 (citations omitted)).

As the lengthy analysis shows, the ALJ stated many bases for his adverse credibility finding. The ALJ first provided a detailed and thorough analysis of Plaintiff's faulty memory of when he was employed. His testimony was prompted by his counsel. Such inconsistent statements supported the ALJ's negative conclusions about Plaintiff's veracity.

The ALJ also appropriately cited Plaintiff's daily activities. Plaintiff's daily activities reflected poorly on his complaints of pain. The ALJ's observation that although he asserted debilitating pain, he had been prescribed strong pain medication and had attended a pain clinic. There was steady improvement in his condition recorded after physical therapy. All of the exaggerated complaints of pain were, in the ALJ's opinion, inconsistent with the evidence.

Additionally, the record was replete with medical evidence that Plaintiff's symptoms were not as severe as he suggested. His asthma was under control. Plaintiff had minor calf pain after he met his pain therapy goals. There was no medical evidence to support the severity of pain he alleged in his legs, neck or back. The physical examination did not support his claim that he could not use his hands. Conservative treatment in the form of physical therapy was recommended to address issues related to the reduced sensation in his left foot. Upon completion of physical therapy, there was no sign of pain with forced dorsiflexion of the ankle and Plaintiff could ambulate normally.

In summary, the Magistrate finds that the ALJ's reasons for rendering an adverse credibility finding as to Plaintiff are clearly stated. Since the ALJ applied the proper standards in his analysis and the credibility determinations are his province, there is no basis for a finding that reversible error occurred.

*3. Plaintiff's Pain*

Plaintiff contends that ALJ's decision is virtually devoid of regulatory factors required in the assessment of pain. The regulatory factors that Plaintiff claims are absent from the decision are found in 20 C. F. R. §§ 404.1529, 416.929 and SOC. SEC. R. 96-7p.

Factors relevant to the claimant's symptoms, such as pain, which will be considered include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the claimant's pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of the claimant's pain or other symptoms; (vi) any measures the claimant uses or has used to relieve pain or other symptoms (e/g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Calhoun v. Commissioner of Social Security,* 338 F. Supp.2d 765, 772 (E. D. Mich. 2004) (*citing* 20 C. F. R. § 404.1529(c)(3)). These factors are reiterated in 20 C. F. R. § 416.929 and SOC. SEC. R. 96-7p.

The ALJ claimed that he considered the factors relevant to Plaintiff's symptoms consistent with 20 C. F. R. § 416.929, 20 C. F. R. § 404.1529 and SOC. SEC. R. 96-7p (Tr. 20, ¶ 3). The Magistrate found a discussion of all factors throughout the decision.

With respect to Plaintiff's daily activities, the ALJ considered that Plaintiff cooked simple meals and shopped for groceries (Tr. 19, ¶ 2). The ALJ considered Plaintiff's history of migraines, asthma, leg pain, radiculopathy and paresthesia (Tr. 20, ¶s 4, 6 and Tr. 21, ¶s 1, 2, 3). He assessed the frequency and intensity of the pain associated with each symptom.

The ALJ also found that Plaintiff's symptoms were and aggravated and/or precipitated by concentrated exposure to dust, smoke, chemical fumes, temperature extremes and humidity extremes (Tr. 20, ¶ 2). The ALJ considered that Plaintiff used inhalers, pain medication and muscle relaxants to relieve his symptoms (Tr. 20, ¶s 4, 5, 6). The ALJ also considered that Plaintiff underwent several treatments including physical therapy, pain management therapy and epidural injections (Tr. 20, ¶ 6; 21, ¶ 1, 3). The ALJ referred to Plaintiff's contention that a probable side effect of the medication was drowsiness (Tr. 19, ¶ 1). He also considered that Plaintiff "soaked in a tub and needed to lie down up to four times daily to relieve his pain" (Tr. 18, ¶ 6). Finally, the ALJ considered the functional limitations imposed by Plaintiff's medical conditions (Tr. 22, ¶ 2).

The Magistrate does not find that in evaluating Plaintiff's pain, the ALJ failed to address the regulatory factors set forth in 20 C. F. R. § 404.1529, 20 C. F. R. §416.929 and Soc. Sec. R. 96-7p.

## **CONCLUSION**

For the reasons set forth in this Memorandum Decision and Order, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

Vernelis K. Armstrong
United States Magistrate Judge

Date: 8/20/2008